**IN THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| TAMERA S. LECHNER, REGINA K. WHITE, and STEVEN D. GIFFORD individually, and on behalf of the MUTUAL OF OMAHA 401(k) LONG-TERM SAVINGS PLAN and on behalf of a class of all those similarly situated, | ) ) ) ) ) ) | CASE NO. 8:18-cv-00022-JFB-CRZ<br><br>Hon. Joseph F. Bataillon<br>Hon. Cheryl R. Zwart (Mag.) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **PROTECTIVE ORDER** |
| v. | ) | **(ESI PROTOCOL)** |
| | ) | |
| MUTUAL OF OMAHA INSURANCE COMPANY, UNITED OF OMAHA LIFE INSURANCE COMPANY and JOHN DOES 1-50, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The parties' Joint Motion for Protective Order Regarding ESI Protocol Production

Format and Metadata is granted. (See Filing No. 68). The agreed protective order is set forth

below.

1.      **General Provisions.** The following terms and conditions (this "ESI Order") shall

govern the collection and production of electronically stored information and any other materials

and information in the above-captioned matter (the "Litigation"). Unless specifically outlined

herein, this ESI Order shall neither enlarge, reduce, or otherwise affect the scope of discovery in

this Litigation as provided by the Local Civil Rules, the Federal Rules of Civil Procedure, and

the Court's orders, nor imply that documents produced under the terms of this ESI Order are

discoverable or relevant in this Litigation or any other action. This ESI Order is intended to

streamline production to promote a "just, speedy and inexpensive determination" of this action,

as required by Federal Rule of Civil Procedure 1.  The parties agree to promptly alert all other

parties concerning any technical problems associated with complying with this ESI Order.  To

the extent compliance with this ESI Order imposes an undue burden with respect to any protocol, source, or search term listed herein, the parties shall promptly confer in an effort to resolve the issue. If there is a dispute concerning the scope of a party's preservation or collection efforts, the burden is on the receiving parties to explain their reasons for believing that additional efforts are reasonable and proportionate. In particular, before initiating discovery about preservation and collection, a party shall confer with the other party concerning the specific need for such discovery, including its relevance to claims and defenses, and the suitability of alternative means for obtaining the information. Discovery into such matters may be compelled only on a showing of good cause considering at least the aforementioned factors.

    2.    **Identification and Collection of Documents**. Except at otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

    **a.** List of records custodians;

    b. Search methodology to be applied, including, but not limited to, search terms and date restrictions; and

    c. Location of relevant data sources including custodial and non-custodial.

Email and Non-Email: the parties agree to search for and produce unique, responsive records from sources of hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the producing party.

If the parties cannot resolve any dispute regarding this section, consistent with The Sedona Conference Principles, Principle 6, the responding party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

3. **Production Components**. To the extent the parties are reasonably able to provide these components, productions shall include single page TIFFs, Text Files, an ASCII delimited metadata file (.txt, .dat, or .csv) and an image load file that can be loaded into commercially acceptable production software (*e.g.*, Relativity).

4. **Search Parameters**. Scanned images must be OCR'd to ensure they are searchable prior to any keyword searching or production. "OCR" means Optical Character Recognition, and is the machine recognition of printed characters from Image Files or other non-searchable text contained in a document into machine-encoded text so that the text can be indexed and searched for specific characters, words or phrases. For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt.

5. **Image Load File.** The Image Load File shall contain the following comma-delimited fields to the extent captured: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, and PAGE COUNT.

6. **Deduplication.** A party is only required to produce a single copy of a responsive document and may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level, or otherwise where the ESI has the exact duplicate content, excluding metadata) across custodians. Metadata identifying all custodians in possession of each document that is removed as a duplicate should be produced in the "CUSTODIAN" or "ALL CUSTODIAN" metadata field in the production load file, to the extent such data exists and can be automatically populated with industry standard ESI tools.

**7.     Email Thread Suppression.**  Each party may also deduplicate e-mails in such a way as to eliminate earlier or incomplete chains of e-mails, and produce only the most complete iteration of an e-mail chain.

**8.     Metadata Fields and Metadata File**. Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document or were not captured at the time of the collection, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated |
| ALL CUSTODIAN | Includes other custodians whose files contained an exact duplicate document that was eliminated through de-duplication to the extent not included in the CUSTODIAN field |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY HH:MM:SS) |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |

| | |
|---|---|
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| MD5HASH | MD5 hash value of the file |
| LOCATION | Original file path showing where the document was stored. For email, this should be the email folder path (e.g. johndoe.pst\Inbox\). For loose files, this should be the path to the file (e.g. Johndoe\Desktop\My Documents\) |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY HH:MM:SS) (Edoc or attachment)<br><br>*Parties acknowledge that the DATECREATED field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location) |
| PRIMARY DATE | The date taken from Email Sent Date, Email Received Date, or Last Modified Date (in order of precedence) |
| FILETYPE | The document file type (e.g. MS Word, Excel) |
| TEXTLINK | Searchable Text File Link |
| NATIVELINK | Native File Link (Native Files only) |
| CONFIDENTIAL | Any confidentiality designation made with respect to the document |

** As it relates to the CUSTODIAN and ALL CUSTODIAN metadata fields above, the Producing Party reserves the right to produce in a single field (e.g., CUSTODIAN) since the metadata may already be exported and logged as such.

** Same is true with all DATE fields. These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

9.      **TIFFs**. Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless exempted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless exempted below, single page Group IV, black & white TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. If an original document contains color and the color is necessary or helpful to understand the content of the document, the receiving party may request by Bates number(s), and the producing shall produce, a colorized TIFF or JPG bearing the same Bates numbers. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the confidentiality designation. Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

10.      **Text Files**. A single text file containing OCR or extracted text shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all unsearchable, scanned or hard copy documents. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

11.      **Image Load Files / Data Load Files**. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

12.     **Bates Numbering**. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

13.     **Confidentiality Designation**. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file, on a TIFF placeholder provided with the document, or within the metadata provided with the document.

14.     **Redaction of Information**. If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data, including any metadata therein.  The producing party can redact documents for privilege or otherwise protected information, personally identifiable information and non-responsive content within a responsive document.  If, during the course of discovery, the parties identify other kinds of information that any party has a reasonable basis for redacting, the parties will meet and confer regarding it before such redactions are made.  If the issue cannot be resolved, the parties will seek resolution from the Court.

15.     **No Designation of Discovery Requests.**  Production of hard copy documents and ESI in the reasonably usable form set out in this ESI Order need not include any reference to the requests to which a document or ESI may be responsive.

16.     **Native File Productions**. Spreadsheets (*e.g.*, MS Excel, Google Sheets), delimited text files (*e.g.*, comma-separated value (.csv) files and tab-separated value (.tsv) files), and presentations (including MS PowerPoint) shall be produced in their native file format. TIFF images need not be produced unless the files have been redacted, in which instance such files

shall be produced in TIFF with OCR Text Files unless the producing party determines the most efficient redaction methodology is a native file redaction. If good cause exists to request production of certain files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review of the particular files for which such review is considered necessary, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in the Metadata list above. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text. To the extent a printed copy of a native document is used as an exhibit at any deposition or hearing or attached to a pleading, the printed copy may not be substantially altered compared to the original native, and the record must clearly indicate the Bates number and confidentiality designation of the native document.

17. **Proprietary Files**. To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

18. **Other Files Requiring Production**. To the extent a response to a non-objectionable discovery request requires production of other file types not addressed, the parties will meet and confer to discuss the most appropriate and cost-effective production format.

19. **Production Media**. Documents shall be produced on external hard drives, readily accessible computer(s), File Transfer Protocol ("FTP") or similar secure electronic file transfer,

or other electronic media ("Production Media"). Each piece of Production Media shall identify a

production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002"). Each

piece of Production Media or correspondence transmitting the Production Media shall also

identify: (1) the producing party's name; (2) the production date; and (3) the Bates Number

range of the materials contained on the Production Media. If a producing party encrypts or

"locks" the production, the producing party shall send, under separate cover, an explanation of

how to decrypt the files.

20.     **Structured Data Sources.** To the extent a non-objectionable discoverable

electronic information is contained in structured data sources, the parties will meet and confer to

discuss the most cost-effective production format, which may include an export of certain data or

the creation of a report. All exports of data or reports will be produced in native format (*e.g.*, csv

file, Excel file, or other agreed format).

21.     **Technology Assisted Review and Search Terms.** Nothing in this ESI Order

prevents a party from using use technology assisted review ("TAR") and other techniques insofar

as their use improves the efficacy of discovery. Nothing in this ESI Order prevents a party from

reviewing and analyzing information identified by search terms to determine whether that

information is responsive to a request for production and withholding documents determined to

be non-responsive. Further, the mere fact that a document is hit or captured by the application of

any agreed upon search terms does not mean that such document is necessarily responsive to any

propounded discovery request or is otherwise relevant to this litigation. Determinations of

discoverability, responsiveness and privilege shall be made by the producing party.

22.     **Inaccessible Documents.** At this point in time, the parties agree that the

circumstances of this case do not warrant the preservation, collection, review, or production of

ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review and production of ESI from sources that are not reasonably accessible. The parties agree that the following ESI is not reasonably accessible:

a. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. On-line access data such as temporary Internet files, history, cache, cookies, and the like.

d. Data stored on photocopiers, scanners, and fax machines.

e. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

f. Server, system, or network logs.

g. Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy.

h. Legacy Systems no longer in use that cannot be reasonably accessed.

i. Texts, voicemail, and instant messaging messages that exist only on a mobile device (e.g., iPhone, iPad, Android, and Blackberry devices) that is neither synched to nor retrievable from another source or device.

j. Dynamic fields of databases or log files that are not retained in the usual course of business.

k. Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

23. **Privilege Logs.** The parties agree that certain privileged communications or documents need not be included in a privilege log: (a) communications between either party (or their employees, agents, and representatives) and that party's counsel relating to this Litigation and created on or after the day the initial complaint in this Litigation was filed, (b) any work product of counsel relating to this Litigation created after the initial complaint in this Litigation was filed, (c) any internal communications within a law firm relating to this Litigation (or among different law firms representing the same clients in this Litigation), and (d) any communications regarding litigation holds or preservation, collection, or review in direct connection with this Litigation.

24. **Subpoenas.** A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Order with the subpoena and state that the parties to the Litigation have requested that the third party produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a third-party subpoena to all other parties. Nothing in this ESI Order is intended or may be interpreted to

11

narrow, expand, or otherwise affect the rights of the parties or third parties to object to a subpoena.

      **25.**      **Costs and Burden.** Discovery in this matter shall be governed by the Federal Rules of Civil Procedure, and nothing in this Order shall modify any aspect of the Rules in this case except as specifically set forth herein.

Dated: **April 9, 2019**

                              BY THE COURT:

                              *s/ Cheryl R. Zwart*
                              United States Magistrate Judge