**IN THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| TAMERA S. LECHNER, REGINA K. WHITE, and STEVEN D. GIFFORD individually, and on behalf of the MUTUAL OF OMAHA 401(k) LONG-TERM SAVINGS PLAN and on behalf of a class of all those similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, UNITED OF OMAHA LIFE INSURANCE COMPANY and JOHN DOES 1-50, )<br><br>Defendants. ) | CASE NO. 8:18-cv-00022-JFB-CRZ<br><br>Hon. Joseph F. Bataillon<br>Hon. Cheryl R. Zwart (Mag.)<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF CLASS, APPOINTMENT OF CLASS COUNSEL, APPROVAL OF CLASS NOTICE AND SCHEDULING OF <u>FAIRNESS HEARING</u>**

Plaintiffs Tamera S. Lechner, Regina K. White and Steven D. Gifford (collectively, "Plaintiffs" or "Named Plaintiffs") submit this Memorandum of Law in support of their Motion for Preliminary Approval of a proposed settlement agreement that the parties have reached in this class action. Plaintiffs seek an Order: (1) preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement"), attached hereto as Exhibit 1, under Fed. R. Civ. P. 23(e); (2)  preliminarily certifying the proposed Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2); (3) appointing Plaintiffs' Counsel as Class Counsel under Rule 23(g); (4) approving the form and method of Class Notice; and (5) setting a date for a hearing for Final Approval of the Settlement ("Fairness Hearing").

## I.      INTRODUCTION

The Named Plaintiffs, individually and on behalf of all others similarly situated and on behalf of the Mutual of Omaha 401(k) Long-Term Savings Plan and the Mutual of Omaha 401(k) Retirement Savings Plan[1]  (the "Plans"), and Defendants Mutual of Omaha Insurance Company ("Mutual"), United of Omaha Insurance Company ("United") and the current or former members of the Retirement Plans Administration Committee ("Administration Committee"), the Retirement Plans Investment Committee ("Investment Committee") and/or the Investment Manager Oversight Committee ("IMOC"), have entered into the Settlement Agreement to resolve all claims asserted in this ERISA lawsuit in exchange for a $6.7 million cash payment.  As is required by Prohibited

---

[1] At the time the lawsuit was initiated, the Mutual of Omaha Retirement Savings Plan did not yet exist. Effective January 1, 2019, the Long-Term Savings Plan was split into two plans with the split determined on whether participants were active participants in or excluded from the Mutual of Omaha Retirement Income Plan ("MORIP"), a defined benefit pension plan. Participants eligible for the MORIP remained in the Long-Term Savings Plan while non-eligible participants were transferred to the Mutual of Omaha 401(k) Retirement Savings Plan ("RSP"), a new defined contribution plan established by Mutual. Effective January 16, 2019, Long-Term Savings Plan investments in the amount of $339,231,855 were transferred from the Long-Term Savings Plan to the RSP.  *See* Mutual of Omaha Long-Term Savings Plan, Form 5500 (2018), available at www.efast.dol.gov.

Transaction Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), an independent fiduciary will review and determine whether to authorize the proposed Settlement on behalf of the Plans.

The proposed Settlement is fair, reasonable, adequate, and in the best interests of Class Members. It provides a substantial and immediate benefit to them in the form of a multi-million-dollar cash payment. It is the product of hard-fought litigation, which included substantial discovery, the exchange and review of key documents, and arm's-length negotiations between experienced ERISA class-action counsel directed by a seasoned and respected mediator. The benefit of the proposed Settlement must be considered in the context of the risk that further protracted litigation might lead to no recovery, or to a much smaller recovery for Plaintiffs and proposed Class Members. Defendants mounted a vigorous defense at all stages of the litigation, and Plaintiffs expect that Defendants would have continued to do so during protracted discovery and trial and potentially through appeal.

In evaluating the terms of the Settlement Agreement, Class Counsel have concluded that the benefits provided to the Class makes the Settlement in the best interests of Class Members in light of, among other considerations: (1) the substantial monetary relief afforded to Class Members; (2) the risks and uncertainties of complex litigation such as this action; (3) the expense and length of time necessary to prosecute this action through trial and any subsequent appeals; and (4) the desirability of consummating the Settlement Agreement to provide prompt, effective relief to the Class Members. In light of these factors, and as discussed further below, Plaintiffs believe that the proposed fair and reasonable Settlement merits preliminary approval.

## II.   LITIGATION AND SETTLEMENT HISTORY

### A.   Description of the Action

On January 25, 2018, Plaintiffs filed a class action complaint in this Court alleging that Defendant Mutual, the Plans' sponsor and fiduciary, violated the duties of loyalty and prudence by selecting its affiliate United to provide administrative and investment services for the Plans. Defendants Mutual and United provided investment options to the Plans through "Separate Account K," which is the principal vehicle through which Defendant United conducts its qualified retirement plan business. Plaintiffs allege that Defendants did so not to benefit the Plans or their participants, but because of the fees and profits, as well as other benefits, that the Plans' use of these services would generate for Defendants. Through their alleged self-dealing, Defendants are alleged to have caused the Plans to pay amounts that greatly exceeded what was necessary or appropriate.

Separate Account K includes many commonly available mutual funds as underlying components of the investment options it makes for the Plan's participants. However, in addition to the ordinary investment management fees charged by the underlying fund managers, Defendants also charged the Plans and the Class Members additional fees (the "Product Charge")  that other investors in those underlying mutual funds, who do not have access to Separate Account K, do not pay.

Plaintiffs further alleged that Defendants acted disloyally and in their own best interest, rather than the best interest of the Plans' participants, by selecting another United investment choice, the Guaranteed Account, a general account guaranteed interest account, instead of guaranteed interest accounts offered by other providers.  Defendants disputed, and continue to dispute, all of these allegations.

On April 23, 2018, Defendants filed their Motion to Dismiss the Complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendants argued, among other

things, that Plaintiff never invested in the Guaranteed Account, alleged no injury-in-fact pertaining to that fund, and thus lacked Article III constitutional standing to challenge Defendants' conduct with respect to it. Defendants asserted that Plaintiff's claim that Defendants engaged in "prohibited transactions" under ERISA Section 406, 29 U.S.C. § 1106, was untimely under ERISA's six-year statute of repose, id. § 1113(1)(A), and that each alleged "transaction" occurred well before January 25, 2012. Defendants also argued that Plaintiff failed to plausibly allege context-specific facts from which the Court could reasonably infer both (1) that the Plan's fiduciary decision-making process was unreasonable and (2) that no prudent fiduciary could have acted as Defendants did under like circumstances.

In response to Defendants' Motion to Dismiss, Plaintiff amended her complaint to include additional Plaintiffs who had invested directly in the Guaranteed Account. The Amended Complaint also included additional allegations describing how the compensation arrangement inherent in Separate Account K resulted in Defendants' receipt of compensation in excess of direct expense actually incurred, in violation of ERISA § 408(c)(2), and in excess of compensation for comparable services otherwise available in the marketplace. Defendants disputed, and continue to dispute, the allegations in the amended complaint.

On June 26, 2018, Defendants filed their Motion to Dismiss the Amended Complaint, again asserting, among other things, that the Amended Complaint failed to plausibly allege facts giving rise to a reasonable inference that the Plan fiduciaries' *decision-making process* was unlawful and led to decisions regarding Plan investments and fees that *no reasonable fiduciary* could have made. Plaintiffs filed their Opposition to Defendants Motion to Dismiss the Amended Complaint on July 31, 2018.

Subsequently, both parties filed Notices of Supplemental Authority.

The Court issued its Memorandum and Order on December 31, 2018, denying Defendants' Motion to Dismiss.

On March 5, 2019, the Court entered a Progression Oder, ECF No. 62, setting deadlines for the completion of discovery and a trial date of October 13, 2020.

### B.   <u>Discovery</u>

After the denial of Defendants' Motion to Dismiss the amended complaint, the Parties proceeded diligently with discovery. On February 22, 2019, Plaintiffs served 23 requests for production, four requests for admission, and two interrogatories. *See* ECF Nos. 58, 59, 60. These requests sought information and documents about the Plans, their structure and administration, their associated costs and fees, and the investment options available to Plan participants. Defendants provided timely written responses and objections to Plaintiffs' discovery requests. *See* ECF Nos. 63, 64, 67. Plaintiffs served an additional request for production on June 21, 2019, to which Defendants again timely responded on July 22, 2019. *See* ECF No. 79. Likewise, Defendants served interrogatories and document requests on Plaintiffs on April 11, 2019, to which Plaintiffs timely responded in writing and by producing documents on May 13, 2019. *See* ECF Nos. 74, 75.

Defendants produced to Plaintiffs roughly 4,000 documents, spanning approximately 30,000 pages, including, among other things, governing Plan documents, minutes and materials from meetings of the Plans' fiduciary committees and the IMOC, Plan-related disclosures to participants, and performance data for the Plans' investment options.

After approximately eight months of discovery, the Class Representatives and Defendants agreed to participate in a private mediation in an effort to resolve all claims that were raised or could have been raised in the Action.

Based on the documents, data, and information produced by Defendants, and Class Counsel's own investigation into the relevant facts, the Class Representatives and Class Counsel believed they had sufficient information to participate in the mediation and negotiate a settlement. After extensive arm's length negotiations, spanning several weeks and supervised by nationally recognized mediator Hunter Hughes, the parties reached a Settlement, the terms of which are memorialized in the accompanying Settlement Agreement.

### C.        Settlement Negotiations

In early October 2019, the Parties scheduled a mediation with Mr. Hughes, a private mediator, which took place in Atlanta, Georgia on January 21, 2020. The parties jointly retained Mr. Hughes, a well-known and highly regarded mediator with extensive experience in mediating complex ERISA class actions, including cases involving claims of excessive fees similar to the claims alleged in the Action.   As part of that process, the parties prepared and submitted detailed mediation statements that included detailed liability assessments, damage analyses, and settlement proposals.

The mediation discussions were intensive and detailed.  Due to the extensive materials provided through discovery, there was a substantial amount of information available regarding the administration of the Plans, the activities of the Retirement Plan Investment Committee that was responsible for selecting and monitoring the Plans' investment choices and administrative expenses, and the historical performance and expenses of the selected investment choices.

After this extensive pre-mediation process, the parties participated in an all-day, in-person mediation with Mr.  Hughes on January 21, 2018. No agreement was reached after lengthy negotiations that lasted until early evening.  Following extensive arm's length negotiations continued after the mediation, spanning several months and supervised by Mr. Hughes, the parties

reached the Settlement, the terms of which are memorialized in the accompanying Settlement Agreement for which Plaintiffs now seek preliminary approval, and developed the Notice plan and the Plan of Allocation on the basis of Class Member and investment data.

During this litigation, the parties were able to develop the legal and factual record as a result of extensive review of the relevant proprietary and public documents and Defendants' production of documents and information through discovery. The proposed Settlement was agreed upon only after extensive arm's-length negotiations among experienced counsel, including an in-person mediation conducted by a seasoned and well-respected mediator. If approved, the Settlement will provide a substantial monetary benefit to Class Members, totaling $6,700,000.

## D.   **The Settlement Agreement**

### 1.   Benefits to Class Members

The Settlement Agreement provides for a cash payment of $6.7 million (the "Gross Settlement Amount") as compensation to the Class as defined in  § 2.25 of the Settlement Agreement. The Gross Settlement Amount will also cover the administrative costs associated with implementing the Settlement; any applicable taxes or tax-related costs; any Case Contribution Award for Plaintiffs approved by the Court; the cost of an independent fiduciary retained to approve the terms of the Settlement on behalf of the Plans and the release by the Plans of claims made against Defendants; and any attorneys' fees and costs approved by the Court. *Id.* § 2.2.  The remaining amount (the "Net Settlement Amount") will be distributed to members of the Class pursuant to the terms of the Settlement Agreement and the proposed Plan of Allocation, which is set forth in Article 6 of the Settlement Agreement. *Id.* § 6.1.

Under the terms of the Settlement Agreement, an initial payment of $100,000 of the Gross Settlement Amount of $6.7 million will be deposited into the Escrow Account (as defined in the

Settlement Agreement) within fourteen (14) calendar days after the later of (a) the date the Court enters a Preliminary Approval Order or (b) the escrow account described in Paragraph 5.1 of the Settlement Agreement is established, for the payment of initial administrative expenses such as the issuance of the proposed Class Notice.   The balance of the Gross Settlement Amount ($6,600,000) will be deposited into the Escrow Account within seven (7) calendar days after the Settlement Effective Date.  *Id.* § 5.4; *see also id.* § __ (defining Settlement Effective Date).  The Settlement Fund will be administered by the Court-approved Settlement Administrator. *Id.* § 6.1. The Settlement Amount, less administration costs, and Court-approved fees, expenses, and Case Contribution Awards, shall be distributed to Class Members in accordance with the Plan of Allocation. *Id.* § 6.3.   The Net Settlement Amount will be allocated to Plan accounts of all Class Members with an Active Account.  *Id.* § 6.2. Allocations of the Net Settlement Amount to all Former Participants will be distributed by check. *Id.* § 6.2.  Class Members who are Former Participants and who otherwise would receive less than $25 under the plan of allocation, will receive no monetary payment under the Settlement.  There will be no *cy pres* payment.

All distributions of the Net Settlement Amount will be made according to the Plan of Allocation, based upon Plan records of the month-end account balances in the Plans for every Class Member for the period during which the Class Member participated in the Plans, as described in Paragraph 6.3 of the Settlement Agreement.  Class Members will not be required to submit claim forms to obtain a share of the Net Settlement Amount.

2.   <u>Retention of an Independent Fiduciary</u>

The Settlement Agreement provides for the appointment of an Independent Fiduciary, as provided in Prohibited Transaction Class Exemption 2003-39, 68 FR 75632 (Dec. 31, 2003), as amended 75 FR 33830 (June 15, 2010), to review the terms of the Settlement and, if appropriate, provide the authorization required by that Exemption to approve the Settlement on behalf of the

9

Plans and the release of Defendants from the Released Claims, as that term is defined in the Settlement Agreement. *Id.* § 2.36. The costs associated with the retention of the independent fiduciary will be an Administrative Expense of the Settlement. *Id.* § 2.2. The Settlement Agreement provides that the Independent Fiduciary must provide a report authorizing the Settlement at least 30 days prior to the Fairness Hearing.  *Id.* § 3.1.2.

Accordingly, in addition to this Court's review and approval, the Settlement will be evaluated by an experienced fiduciary, whose sole loyalty is to the Plans and its participants and beneficiaries (including the Class Members), for a determination whether the Settlement is (1) reasonable in the light of the litigation risk and the value of the claims, (2) consistent with an arm's length agreement, and (3) not part of an agreement or arrangement to benefit a party in interest.

### 3.   Attorneys' Fees, Costs and Service Award for Plaintiffs

Class Counsels' fees, costs and expenses and Plaintiffs' Case Contribution Award will be paid from the Gross Settlement Amount as the Court may so order. *See generally Id.* Article 7. Class Counsel will petition the Court for Case Contribution Awards not to exceed $10,000 for each of the Named Plaintiffs in recognition of their service. *Id.* § 7.2. Class Counsel will also petition the Court for an award of attorneys' fees and litigation costs and expenses advanced and carried by Class Counsel for the duration of the litigation of an amount not to exceed one-third of the Gross Settlement Amount or $2,233,333. All requests will be subject to Court approval, and Defendants will take no position with the Court regarding Class Counsel's request for Attorneys' Fees and Costs. *Id.* §§ 7.1-7.2.

### 4.   Release of Claims

Under the terms of the Settlement Agreement, Plaintiffs and the Class Members, on their own behalf and on behalf of their current and former beneficiaries, their representatives, and their successors-in-interest, and the Plans, absolutely and unconditionally release and forever discharge

the Released Parties from the claims alleged in the amended complaint and as described in the

Settlement Agreement. *Id.* §§ 2.35 (defining Released Parties), 2.36 (defining Released Claims),

8.1-8.4 (Release and Covenant Not to Sue provisions)-.  Additionally, Plaintiffs, the Class and the

Plans agree not to sue, and are voluntarily enjoined from instituting any action relating to the

Released Claims other than any action to enforce the terms of the Settlement Agreement. *Id.* § 8.2.

The full scope of the releases and covenant not to sue is set forth in the Settlement Agreement at

Article 8.

5.   <u>Notice and Objections</u>.

Pursuant to Federal Rule of Civil Procedure 23(e)(1) and (e)(5), the Settlement Agreement

provides for notice to the Class and an opportunity for Class Members to object to approval of the

Settlement. *Id.* § 3.3. The Parties have agreed, subject to Court approval, to a notice plan that will

provide the Class Members with sufficient information to make an informed decision about

whether to object to the proposed Settlement. The proposed Settlement Notice is attached as

Exhibit 2 to the Settlement Agreement. The proposed Settlement Notice procedure includes first-

class mail to the last known mailing addresses of all Class Members, which addresses will be

supplied by Defendants or Ascensus, the Plans' recordkeeper.

The Settlement Notice will inform Class Members of the nature of the action, the litigation

background and the terms of the Settlement Agreement, including the definition of the Class, the

relief provided by the Settlement Agreement, the intent of Class Counsel to seek fees and costs,

the proposed Case Contribution Award payable to Plaintiffs, and the scope of the release and

binding nature of the Settlement on Class Members. It also describes the procedure for objecting

to the Settlement and states the date, time and place of the final approval hearing. *Id.*  The

Settlement Agreement provides that the Settlement Administrator shall establish a Settlement

11

Website that will contain the Notice, the Settlement Agreement and its exhibits, and a Settlement Information Line. *Id.* § 11.2.

### III.    ARGUMENT

#### A.    The Class Meets All Requirements of Rule 23(a) and (b)(1) and Should Be Certified.

In connection with preliminary approval of the Settlement, Plaintiffs seek class certification for settlement purposes. Defendant takes no position on this motion.  As part of the Settlement, Plaintiffs propose, and Defendant does not object to, for settlement purposes only, certification of the Class defined as follows:

> **Class**
>
> "Class" means a Class certified under Fed. R. Civ. P. 23(b)(1), consisting of all persons who are or were participants or beneficiaries in one or both of the Plans at any time during the Class Period, including any Beneficiary of a deceased person who participated in one or both of the Plans at any time during the Class Period, and/or Alternate Payee, in the case of a person subject to a Qualified Domestic Relations Order who participated in one or both of the Plans at any time during the Class Period.  Excluded from this Class are all current and/or former employees of Defendants who were members of the Administration Committee, Investment Committee, and/or IMOC during the Class Period.

Ex. __, Settlement Agreement § 2.9.

Before assessing whether the Settlement is within the range of reasonableness for the purposes of preliminary approval, the Court must conduct an independent class certification analysis.  The Class meets all of the requirements for certification under Federal Rule of Civil Procedure 23(a) and Rule 23(b)(1).

A class may be certified under Rule 23(a) when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class.  *See*, *e.g.*, *Wildman v. Amer. Cent. Serv., LLC*, No. 16-cv-737, 2017 WL 6045487, at * 2 (W.D. Mo. Dec. 6, 2017). To have a class certified, plaintiffs must satisfy all four of the Rule 23(a) prerequisites and fall within one of the three subtypes of class actions listed in Rule 23(b). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).

1.    <u>The Class is so numerous that joinder is impracticable.</u>

Rule 23(a)(1) requires that a class be so numerous that joinder of all class members is "impracticable." "There is no magic number for proving numerosity, but courts have stated as few as forty class members is sufficient to show joinder is impracticable." *Powers v. Credit Mgmt. Servs., Inc.*, No. 8:11CV436, 2013 WL 3716412 (D. Neb. July 12, 2013)). *See also, Jones v. Novastar Fin., Inc.,* 257 F.R.D. 181, 186 (W.D. Mo. 2009) ("The proposed class numbers over one thousand persons. [Plaintiff] has satisfied Rule 23(a)(1)."); *Speer v. Cerner Corp.*, No. 14-204, 2016 WL 5444648, at *5-6 (W.D. Mo. Sept. 27, 2016) (numerosity met when there were thousands of proposed class members). Plan records show that there were more than 7,000 participants with account balances at the end of 2018.  Therefore, the numerosity requirement is satisfied.

2.    <u>There are questions of law and fact common to the Class.</u>

Class certification is "'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and … 'turn on questions of law applicable in the same manner to each [class] member.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). Rule 23(a)(2) does not require that every question of law or fact be common to each member of the class, rather "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Plaintiffs must also show that at least one of the questions common to the class can be answered with a common

13

answer, meaning "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes v. Wal-Mart Stores, Inc.*, 131 S.Ct. 2541, 2551 (2011).

The Class satisfies the commonality requirement.  Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury."  *Id.*, 131 S. Ct. at 2548, 2551.  Commonality is typically present in ERISA cases because the "appropriate focus . . . is the conduct of the defendants, not the plaintiffs." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 209 (W.D. Mo. 2006) (quoting *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 422 (N.D. Okla. 2005)). *Keele v. Wexler*, 149 F.3d. 589, 595 (7th Cir. 1998); *see also George v. Kraft Foods Global, Inc.*, 270 F.R.D. 355 (N.D. Ill. 2010) (citations omitted). Commonality does not require an identity of claims or facts among class members. *Johnston v. HBO Film Management, Inc.,* 265 F.3d 178, 184 (3d Cir. 2001). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id.* at 184, *quoting In re the Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 310 (3d Cir. 1998).

In this case, the commonality requirement is readily satisfied because Plaintiffs' allegations arise from the same common nucleus of operative facts, and all members of the proposed Class would cite the same common evidence to prove their identical claims.  The Product Charge at issue applied to all funds offered in the Plans other than the Guaranteed Account, and the alleged excessive indirect compensation received by United from the management of the Guaranteed Account, applied to the Account as a whole.  Thus, in this case, a "classwide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (U.S. 2011). *Tussey v. ABB, Inc.*, No. 06-cv-4305, 2017 WL

6343803, at * 5 (W.D. Mo. Dec. 12, 2017) (certifying class "[b]ecause all members of the class are interested in these excess fees being returned to the Plan, there is clearly a common question …").

The legal and factual questions linking Class Members are related to the resolution of the litigation of every Class Member's claims. Common questions of law and fact are presented about whether Defendants breached their fiduciary duties concerning the Product Charge and concerning the spread between what Defendants earned on the Guaranteed Account and what they paid Class Members.  The many questions of law and fact common to the Class (and the nature of the common evidence used to prove these elements of the claims) include:

a.   Whether Defendants were fiduciaries under ERISA with respect to the selection of affiliated Plan service providers;

b.   How Defendants determined and approved the Product Charge and the crediting rate paid under the Guaranteed Account;

c.   Whether Defendants' selection and retention of Plans' fee structures were performed prudently and solely in the best interests of participants (focused exclusively on Defendant's conduct);

d.   Whether Defendants received more than reasonable compensation for services provided to the Plans;

e.   Whether Defendants breached their fiduciary duties of loyalty and/or dealt with the assets of the Plan in their own interest in violation of ERISA §§ 404(a) and 406(b)(1), 29 U.S.C. §§ 1104(a) and 1106(b)(1);

f.   Whether Defendants caused the Plans to engage in transactions prohibited by ERISA § 406(a), 29 U.S.C. § 1106(a); and

g.   Whether Defendants' actions proximately caused losses to the Plans and, if so, the appropriate relief to which the Plans are entitled (focused exclusively on Defendants' conduct).

These are the core issues in this case and the alleged bases for the harms that unify all Class Members. The evidence necessary to resolve these issues is the same, including the benefits of the

Plans' structure and the costs and fees for that structure. Classes consisting of ERISA plan participants making similar claims are routinely certified in this and other Courts. Thus, the commonality requirement is readily satisfied for the Class. *Kanawi v. Bechtel*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) ("[T]he common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees . . . ."); *Tibble*, 2009 WL 6764541, at *3–4 (common issues included "[w]hether Defendants chose certain investment options in order to maximize the amount that Defendants could obtain from the mutual funds, rather than to maximize the return to the Plan participants").

3.      Plaintiffs' claims are typical of the claims of the Class.

Rule 23(a)(3)'s typicality requirement is similar to the commonality requirement but examines whether the proposed class representatives have the same interests and seek a remedy for the same injuries as other class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re American Medical Systems, Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) quoting from 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3–13, at 3–76 (3d ed. 1992) (footnote omitted).

This requirement is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995); *Wildman*, 2017 WL 6045487, at *4-5. "[I]f the claim arises from the same event or course of

conduct as the class claims and gives rise to the same legal theory or remedial theory" individual factual variations will not normally defeat class certification. *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 603 (W.D. Mo. 1999) (citing *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1997)). This is especially true in ERISA cases where plaintiffs raise claims on behalf of the plan. *Tussey*, 2007 WL 4289694, at *3 (W.D. Mo. Dec. 3, 2007).  See *In re Aquila ERISA Litig.,* 237 F.R.D. 202, 209 (W.D. Mo. 2007) ("Rule (23(a)(3) . . . 'simply requires a demonstration that there are other members of the class who have the same or similar grievances as the class representative.'" (quoting from *Paxton v. Union Nat. Bank,* 688 F.2d 552, 562 (8th Cir. 1982)).

"A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).  Here, Plaintiffs' amended complaint alleges that Defendants received excessive and unreasonable compensation for the services provided to the Plans; that the unreasonable compensation was collected through charges assessed to the Separate Account K funds included in the Plans' menu of investment choices; and that Defendants received more than reasonable compensation from the Guaranteed Account from the spread between the earnings on the investment of assets supporting the Guaranteed Account and the interest paid on participants' investment in the Guaranteed Account.  Plaintiff Tamera S. Lechner invested in the Mid Cap Stock Index Fund, the Royce Total Return Fund, the Mutual Directions 5 Fund, the International Developed Countries Fund, the International Stock Index Fund, and the Wells Fargo Advantage Emerging Markets Fund. Plaintiff Regina K. White invested in the Mutual Directions 3 – Moderate Fund and the Guaranteed Account. Plaintiff Steven D. Gifford invested in the Mutual Directions 4 Fund, the Mutual Directions 5 Funds and the Guaranteed Account.  It is clear, then,

from the allegations of the Amended Complaint, that all three Named Plaintiffs were purportedly paying excessive fees to Defendants by the Product Charge associated with the Plans' investment choices and that White and Gifford allegedly paid excessive indirect compensation for their investment in the Guaranteed Account.

For the same reasons that Plaintiffs' claims are common to all Class Members, they are also typical. Plaintiffs, like other members of the Class, (1) seek relief for the same losses, (2) caused by the same alleged breaches of fiduciary duties, (3) affecting the same Plans and funds. *Cf. Spano*, 633 F.3d at 586-87, 589-90. "Nothing more is required to satisfy Rule 23." *Kraft*, 270 F.R.D. at 367. Here, as in *In Re Broadwing,* "the representative party's claims concerning their retirement account arises from the same events, practices and course of conduct that gives rise to the claims of the other Class Members. In addition, the representative party's claims are based on the same legal theories as other Class Members." *Id.* at 378.

4.   <u>Plaintiffs will fairly and adequately represent the Classes.</u>

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); 1 *Newberg, supra,* § 3.21, at 3–125. Accordingly, Plaintiffs must demonstrate that (1) they "will vigorously prosecute the interest of the class through qualified counsel" and (2) they "have common interests with the members of the class." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-563 (8th Cir. 1982).

The foregoing discussion about typicality should adequately demonstrate Plaintiffs' satisfaction of the second prong of this test: that their claims, like the claims of other Class members, arise from the same events, practices and/or courses of conduct—namely, Defendants' allegedly unreasonable and excessive compensation. Plaintiffs' claims are also typical because all

18

Class members are similarly affected by Defendants' alleged conduct, and all Class members seek the same relief on behalf of the Plans. Plaintiffs have provided documents and information to Plaintiffs' counsel for preparation of the complaints, reviewed the complaints, engaged in discussions with counsel, and participated in the settlement process, thereby contributing to the efficient prosecution of this litigation. Named Plaintiffs were prepared to make themselves available for a deposition by Defendants if the case proceeded further into discovery and to appear at trial. Plaintiffs thus satisfy Rule 23(a)(4).

Additionally, plaintiffs in ERISA and other employment-related litigation undertake a risk that prosecuting such actions could taint their current employment situation or their prospects for future employment.  And while ERISA expressly prohibits an employer from taking any adverse action against an employee for exercising his or her rights under ERISA, the very need for such a rule underscores the historical reality that such conduct has occurred and continues.  Plaintiffs have thus demonstrated a willingness to assume that risk for the benefit of the Class.

"The plan-wide nature of the relief sought by Plaintiff unites their interests with those of absent Class Members. In addition, Plaintiffs and each Class Member have been damaged by the same alleged misconduct and, as a result, each has precisely the same interest in achieving the maximum recovery." *In Re Broadwing,* 252 F.R.D. at 378.

Whether the named plaintiffs properly represent the class' interest depends upon a number of factors including: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the absentee members. *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)(en banc).   As discussed in C. below, the proposed Class Representatives have retained counsel with significant

experience in ERISA class actions. In sum, the named Plaintiffs are adequate representatives of the proposed Classes.

Finally, Class representatives cannot have interests that are in conflict with other Class members. See *U.S. Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 873 (8th Cir. 1978) (stating that Rule 23(a)(4) requires that "the plaintiff must not have interests antagonistic to those of the class." (citation and quotation marks omitted)); Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 315-16 (5th Cir. 2007) (noting that "intraclass conflicts may negate adequacy under Rule 23(a)(4)").Here, the interests of the Named Plaintiffs and the other members of the Class are completely aligned.

### 5.    The Class satisfies the requirements of Rule 23(b)(1).

Fed. R. Civ. P. 23(b)(1)(B) provides that a class may be certified where "prosecuting separate actions by . . . individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).  As the Supreme Court has explained, Rule 23(b)(1)(B) applies where "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members."  *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 834 (1999). "Classic examples" of suits appropriate for class resolution under Rule 23(b)(1)(B) classes include "actions charging a breach of trust by a . . . fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Id.* The Rule 23 Advisory Committee noted that "an action which charges a breach of trust … by [a] … fiduciary similarly affecting the members of a large class of … beneficiaries"

20

calls for certification under this section.  Indeed, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *Jones v. NovaStar Fin., Inc.,* 257 F.R.D. 181, 194, 2009 U.S. Dist. LEXIS 30247, *34(citation and quotation marks omitted).

"Rule 23(b)(1)(A) certification is particularly appropriate where a central element of plaintiffs' claims are not an individual matter; here the central questions concerning whether the fiduciaries breached their duties to the Plan are not individual." *Jones*, 257 F.R.D. at 193 (citation omitted). "The Court believes that the central element of Plaintiffs' claims are whether the Defendants breached their duties to the Plan, and are not individual. Accordingly, the class in the present case is maintainable under Rule 23(b)(1)(B) and Rule 23(b)(1)(A)." *Taylor v. ANB Bancshares, Inc.*, 2010 U.S. Dist. LEXIS 118030, *43, 2010 WL 4627841.

This is the type of case that Rule 23(b)(1) envisioned. Plaintiffs allege that Defendants breached their fiduciary duties to the Plans and that the breaches similarly affected all Plan participants.  The proposed class therefore satisfies Rule 23(b)(1)(A).

## B.    The Settlement Should Be Preliminarily Approved

"It is axiomatic that the settlement of class-action litigation is favored." *Robinson v. Shelby Cnty. Bd. of Educ.,* 566 F.3d 642, 648 (6th Cir.2009); *see also, Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Williams v. Quinn,* 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) ("Federal courts favor the settlement of class actions"); *Goldsmith v. Tech. Solutions Co.,* No. 92-4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) at *6 ("the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement."). "In evaluating settlements, such as this one, courts have recognized that complex litigation is 'notoriously difficult and unpredictable.'" *Granada Invs.,*

*Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992) (quoting *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir.1983)).

In approving a class settlement, the district court must consider whether it is fair, reasonable, and adequate. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). In the Eighth Circuit courts are directed to examine the following factors in evaluating if it should approve a class action settlement:  (1) the merits of the plaintiff's case weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). A district court has broad discretion in assessing the weight and applicability of these factors. *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012). As set forth below, the Settlement is fair, reasonable, and adequate and should be preliminarily approved. *see also Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). The district court need not make a detailed investigation consonant with trying the case; it must, however, provide the appellate court with a basis for determining that its decision rests on "well-reasoned conclusions" and is not "mere boilerplate." *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)(citations omitted). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is "the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999) (internal quotations omitted)." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932-933, 2005 U.S. App. LEXIS 1546, *24-25.

The merits of the Plaintiffs' case are the most important consideration in deciding whether a settlement is fair, reasonable, and adequate. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999). The first step is determining if a settlement is fair analyzing the strength of the

plaintiff's case to establish the value of class members' claims. "This is not a simple mathematical exercise with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'" *Hashaw v. Department Stores Nat. Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Courts perform a "ballpark valuation." *Synfuel Techs.,* 463 F.3d at 463.

Preliminary approval is warranted when a proposed class-action settlement is "within the range of possible approval" so as to provide a "reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (citing *Manual for Complex Litigation* § 1.46). "Our task is not to decide whether one side is right or even whether one side has the better of these arguments. Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement. The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir.2007) ("UAW").

 "[T]he court's task is . . . not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011) (citing *Armstrong*, 616 F.2d at 314).  In determining whether to approve a settlement preliminarily, "the court must consider 'the strength of plaintiffs' case compared to the amount of defendant's settlement offer, an assessment of the likely complexity, length and expense of the litigation, and evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Gehrich v. Chase*

*Bank USA, N.A.,* 316 F.R.D. 215, 227 (N.D. Ill. 2016) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006)).  All of these factors warrant preliminary approval of the proposed Settlement.

        1.    <u>The Merits of the Case Weighed Against the Terms of the Settlement.</u>

There two separate and distinct elements of damages deriving from the allegations of the Amended Complaint: (i) the fees for recordkeeping and administrative services charged by United in excess of Defendants' direct expense actually incurred; and (ii) the earnings derived by United in connection with the Guaranteed Account generated by the investment of plan assets in excess of the interest credited to participant accounts invested in the Guaranteed Account.

In considering the Settlement's fairness, a court must consider the challenges that plaintiffs would face in prevailing on their claims. *See*, *e.g.*, *Ramsey v. Sprint Comm. Co., L.P.*, No. 11-cv-3211, 2012 WL 6018154, at * 3 (D. Neb. Dec. 3, 2012). In doing so, the court "does not try the case," but instead identifies the disputed factual and legal issues that make it less likely for the plaintiffs to receive a full recovery. *Id.* (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). "If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation." *Ramsey*, 2012 WL 6108154, at * 3 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995)).

Defendants vigorously defended these claims, asserting, among other arguments and defenses, that United was not a fiduciary and, therefore, not subject to the limitation on compensation set forth in ERISA § 408(c)(2), and that the Plans paid less for administrative services than other comparably sized plans.

Plaintiffs' claims with respect to the Guaranteed Account were subject to multiple defenses.  ERISA § 408(b)(5) provides an exemption from the prohibited transaction rules for a plan's investment in annuity contracts, provided certain conditions are met.  Additionally, ERISA § 401(b)(2) provides that when a plan invests in an insurance company guaranteed benefit policy, the policy itself is considered a plan asset but not the underlying assets of the insurer.

Thus, Plaintiffs faced a risk that they would be unable to establish Defendants' liability, and if they were able to do so, they faced the further risk that a trier of fact would find no damages or damages that were less than the $6.7 million Settlement achieved through mediation.

The Settlement provides substantial monetary relief.  It provides for a multi-million-dollar payment to the Plans for distribution to members of the Class. The Settlement was achieved only after lengthy, complex, and often contentious arms-length negotiations between well-informed and experienced counsel after substantial exchange of discovery.  It is the opinion of the counsel who achieved the Settlement that it is fair and reasonable to the members of the Class. Each of these factors strongly supports preliminary approval of the Settlement.

2.      <u>Defendants' Financial Condition</u>.

Defendants' enterprise is a multi-billion-dollar Fortune 500 company, and there is no suggestion that Mutual and United would not have enough assets to pay the Settlement. Defendants' financial condition did not play any role in Plaintiffs' acceptance of the Settlement. This supports the Court's preliminary approval of the Settlement. *See*, *e.g.*, *Cooper*, 2018 WL 3468372, at * 4;

3.      <u>Complexity and Expense of Further Litigation</u>.

Absent this Settlement, continued litigation of this Action would be complex and lengthy, requiring the investment of considerable resources by both parties and the Court. Liability in this

25

case is heavily contested, and both sides would face considerable risks. In contrast to the complexity, delay, risk, and expense of continued litigation, the proposed Settlement will produce certain, and substantial recovery for Class Members.

The Settlement provides an immediate recovery to the Class, rather than delaying any possible recovery until years in the future. Courts have acknowledged that ERISA fiduciary breach cases "often lead [] to lengthy litigation." *Krueger v. Ameriprise*, No. 11-cv-2781, 2015 WL 4246879, at * 1 (D. Minn. July 13, 2015). ERISA fee cases may last for a decade or longer. *See*, *e.g.*, *Tussey v. ABB, Inc.*, No. 06-cv-4305, 2017 WL 6343803, at * 3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed); *Tibble v. Edison Int'l*, No. 07-cv-5359, 2017 WL 3523727, at * 15 (C.D. Cal. Aug. 16, 2017) (outlining issues for trial in a case filed in 2007). The potential for protracted litigation supports the Settlement's approval. *See also Cullan and Cullan LLC v. M-Qube, Inc.,* No. 8:13-cv-172, 2016 WL 5394684, * 7 (D. Neb. Sept. 27, 2016) (approving settlement because it provided "a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal…").

The $6.7 million cash payment represents a substantial recovery.  These results are particularly beneficial to the Class in light of the risks posed by continued litigation, including the possibility of the Court ultimately finding no liability or the inability to prove damages.

Substantiating Plaintiffs' claims regarding excessive administrative fees would have required detailed and expert examination of United's operations and financial records supporting the cost of those operations.

Proving Plaintiffs' claims regarding the Guaranteed Account would have been even more complex and time-consuming. Whether an insurance company general account investment

contract constitutes a "guaranteed benefit policy" as defined in ERISA § 401(b)(2) depends on whether the contract transfers investment risk to the insurer.  *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 96 (1993).  That issue, in turn, would require expert analysis of the assets and investment returns of United's general account over a period of years, requiring expertise in both financial planning and insurance company accounting.  Even after the lengthy and expensive analysis, an adverse finding would effectively foreclose any recovery on that claim.

This analysis was done against the backdrop of recent similar cases involving insurance company guaranteed accounts that have failed, *Teets v. Great-West Life & Annuity Ins. Co*., 919 F.3d 1232, (10th Cir. 2019)(cert. denied), or that have survived only after appeal from entry of summary judgment*, Rozo v. Principal Life Ins. Co*., 949 F.3d 1071 (8th Cir. 2020).

Courts also recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See, e.g., Armstrong,* 616 F.2d at 325 (in determining the fairness of a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel"); *Hispanics United*, 988 F. Supp. at 1170 (same); *Alliance to End Repression v. City of Chi.*, 561 F. Supp. 537, 548 (N.D. Ill. 1982) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.").  Here, proposed Co-Lead Counsel – two law firms that are nationwide leaders in ERISA class-action litigation – have made a considered judgment based on adequate information derived from substantial discovery that the Settlement is not only fair and reasonable, but a favorable result for the Class. Co-Lead Counsels' beliefs are based on their deep familiarity with the factual and legal issues in this case and the risks associated with continued litigation.

The arm's-length nature of the settlement negotiations creates a presumption that the Settlement is fair. *See Nat'l Rural Telecomm Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D.

Cal. 2004) ("A settlement following sufficient discovery and genuine arm's-length negotiation is presumed fair."); *Mangone v. First USA Bank,* 206 F.R.D. 222, 226 (S.D. Ill. 2001) (a settlement proposal arrived at after arm's length negotiations by fully informed, experienced and competent counsel may be properly presumed to be fair and adequate) (*citing Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 320 (N.D. Ill. 1979)).

While Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that their claims present a number of substantial risks to establishing both liability and damages and there was no certainty that Plaintiffs would have prevailed at trial.  Defendants mounted vigorous defenses to Plaintiffs' claims in this Action and have set forth multiple defenses in their pleadings.

In light of all of these risks, Plaintiffs and their counsel believe the Settlement represents a favorable outcome for Class members. The Settlement will avoid the cost and expense of continued litigation and will achieve immediate relief for Class members.

4.   The Opposition to the Proposed Settlement.

This factor is not yet relevant and will be addressed at the final approval stage after Class members have been notified of the Settlement. *See*, *e.g.*, *Cooper v. Integrity Home Care, Inc.,* No. 16-1293, 2018 WL 3468372, at *4 (W.D. Mo. July 18, 2018). Plaintiffs are not aware of any potential Class members who intend to oppose the Settlement.

**C.   The Court should appoint Plaintiffs' Counsel as Co-Lead Class Counsel.**

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel. In appointing class counsel, the Court "must" consider:

- the work counsel has done in identifying or investigating potential claims in the action;

28

- counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference. *See, e.g., UAW v. Ford Motor Co.,* 2008 WL 4104329 at *26 (E.D.Mich., August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.")." *Thacker v. Chesapeake Appalachia LLC,* 695 F.Supp.2d 521, 532-33, (E.D.Ky. 2010).

Proposed Co-Lead Class Counsel, the law firms of Schneider Wallace Cottrell Konecky LLP, and Berger Montague PC, satisfy these criteria. This team of law firms expended a great deal of time, effort and expense investigating Defendants' documents, practices, and actions prior to and since filing this action. Further, as set forth in the firm resumes submitted herewith, each firm is highly experienced in ERISA litigation. *See* Exs. 1 and 2 attached to this Memorandum. It is clear from each firm's track-record of success that Class Counsel are highly skilled and knowledgeable concerning ERISA law and class-action practice.

Both Schneider Wallace and Berger Montague have extensive experience in class action matters, including ERISA matters. Schneider Wallace and Berger Montague have been appointed co-lead counsel in several other similarly complex class actions, described in more detail in the firms' resumes attached to this Memorandum as Exhibits 2 and 3. For example, Schneider Wallace and Berger Montague were recently appointed co-lead counsel in connection with a $6.5 million

settlement of *Daugherty v. University of Chicago,* 2018 WL 1805646, (N.D. Ill. Jan. 10, 2018),

and in $3.8 million settlement in *Short v. Brown Univ.,* 320 F. Supp. 3d 363, (D.R.I. 2018), class

actions involving claims similar to the claims in this case.

### D. The Settlement Does Not Have Any Substantive or Procedural Deficiencies.

A class action settlement is a private contract negotiated between the parties that is

"presumptively valid." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig*., 716 F.3d

1057, 1063 (8th Cir. 2013) (internal quotations omitted). "Rule 23(e) requires the court to intrude

on that private consensual agreement merely to ensure that the agreement is not the product of

fraud or collusion…" *In re Wireless Tel. Fed. Cost Recovery Fees Litig*., 396 F.3d at 934. In doing

so, courts look for "glaring substantive or procedural deficiencies" and consider whether the

"settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is

unduly favorable to class representatives or certain class members, or excessively compensates

attorneys." *Adams*, 2016 WL 7664135, * 3 (citing *Schoenbaum v. E.I. Dupont De Nemours and

Co.*, No. 4:05-cv-1108, 2009 WL 4782082, * 3 (E.D. Mo. Dec. 8, 2009)).

The Settlement does not contain any deficiencies, glaring or otherwise. Substantively, in

simplest terms, the Settlement provides Class members with money in exchange for a release and

a covenant-not-to-sue. The monetary amount of the Settlement is fair given the strength and risks

associated with Plaintiffs' claims. And, the Settlement's release and covenant-not-to-sue clauses

are appropriately tailored in light of the circumstances, allegations, and claims asserted in the

Amended Complaint. Settlement at § 2.36.

The Settlement also does not unduly favor the Plaintiffs. Plaintiffs' shares of the Settlement

will be based on the Plan of Allocation, a formula that seeks to allocate money in proportion to the

relative value of their accounts in the Plans during the relevant period. Settlement § 6.3. While

Plaintiffs also intend to request Case Contribution Awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount (*see* Settlement Agreement at § 7.2(b)) and the amount that Plaintiffs intend to request is consistent with the awards in other cases. *See*, *e.g.*, *Calogiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (affirming decision to give case contribution awards of $10,000 to each of the plaintiffs); *see also Kruger*, 2016 WL 6769066, at * 6 (awarding class representatives $25,000 each for their contributions); *Adams v. Craddock*, 2016 WL 7664135, at * 6 (granting preliminary approval when "class counsel's compensation is not set by the settlement but will be determined by petition to the Court.").

Likewise, the Settlement does not excessively compensate Class Counsel. The amount of fees and costs that Class Counsel intends to request, one-third of the Settlement, is reasonable and consistent with the awards in other ERISA cases. *Spano v. The Boeing Co*., 2016 WL 3791123, *2 (S.D. Ill. Mar. 31, 2016) (collecting cases); *see also Denard v. Transamerica Corporation*, No. 15-cv-30, 2016 WL 3554978, at * 2 (N.D. Iowa June 24, 2016) (preliminarily approving settlement in ERISA class action where class counsel could seek fees of up to one third of the settlement fund); *Kruger*, 2016 WL 6769066 (approving attorneys' fees of one third of the settlement fund in ERISA 401(k) fiduciary breach class action).

The Parties reached the Settlement in a procedurally fair manner. For this factor, courts consider the stage of proceedings and amount of discovery completed, the opinion of experienced counsel, and whether the settlement was negotiated at arm's length. *In re Wireless Tel. Fed. Cost Rec. Litig*., 396 F.3d at 934; *see also Adams*, 2016 WL 7664135, at * 3 ("[C]ourts should consider issues such as whether the settlement carries the hallmarks of collusive negotiation or uninformed decision-making…")

Class Counsel was fully aware of this case's strengths and weaknesses when negotiating the Settlement, which supports the Settlement's preliminary approval. *See*, *e.g.*, *Risch v. Natoli Engineering Co., LLC*, No. 11-cv-1621, 2012 WL 4357953, at * 3 (E.D. Mo. Sept. 24, 2012) (approving settlement when the parties engaged in "extensive fact discovery, exchanging and reviewing significant numbers of documents…[including] all documents necessary to evaluate the class claims and damages."); *King v. Ranieri Constr., LLC et al.*, No. 14-cv-1828, 2015 WL 631253, at * 3 (E.D. Mo. Feb. 12, 2015) (approving settlement when the "parties engaged in settlement negotiations and exchanged a large amount of documents and information for a month before submitting the proposed settlement.").

Class Counsel also has in-depth knowledge of the legal framework applicable to this case. Plaintiffs' attorneys have decades of experience prosecuting, settling, and trying ERISA cases on behalf of retirement plan participants, which they used to evaluate and negotiate the Settlement. Collins Decl. at ¶¶ XX. It is Class Counsel's opinion that the proposed Settlement is fair and reasonable, a factor which supports the Settlement's approval. *See*, *e.g.*, *Netzel v. West Shore Grp.*, No. 16-cv-2552, 2017 WL 1906955, at * 6 (D. Minn. May 8, 2017) (approving settlement when class counsel had "sufficient and extensive experience…").

### E.    The Proposed Class Notice Is Appropriate and Should be Approved

As set forth in the proposed Preliminary Approval Order, Class Counsel will cause Class Members to be notified of the pendency of the Action and the proposed Settlement by causing the Settlement Notice to be mailed to all Class Members.  The Settlement Administrator will also establish a website related to the Settlement, with the Notice featured on it, as well as a Settlement Information Line.  This procedure is designed to reach as many Class Members as reasonably practicable. The Settlement Notice informs Class Members of the nature of the Action, the

definition of the Class, the binding nature of the Settlement on Class Members, and the intent of Class Counsel to seek Case Contribution Awards for Plaintiffs and an award of attorneys' fees and reimbursement for litigation expenses. It contains a detailed but easily-understandable summary of the terms of the Settlement Agreement (including the relief provided and the scope of the Release) and a copy of the proposed Plan of Allocation.  It also informs Class Members how and when to file objections,[2] and states the date, time and place of the Fairness Hearing.

The form and manner of providing notice to the Class satisfies all the requirements of Rule 23 and due process.  A settlement must provide adequate notice to class members so that each can make an informed choice about whether to object. Rule 23(e)(1) provides that, in the event of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1).  To satisfy due process, the notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cen. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Courts have considerable discretion in approving an appropriate notice plan. *Eirhart v. Libbey-Owens-Ford Co.*, 921 F.2d 278, at *1 (7th Cir. 1990) (table op.) (observing that a district court "has 'virtually complete discretion' as to the manner in which notice of a proposed settlement be given."); *Manual for Complex Litig.* § 21.311 ("Determination of whether a given notification is reasonable under the circumstances of the case is discretionary.")

The notice program set forth in the proposed Preliminary Approval Order meets these standards: it provides the best practicable notice under the circumstances and is reasonably calculated to reach substantially all members of the Class.  Settlement Notices will be directly

---

[2] As this is a Rule 23(b)(1) class action, there is no provision for opting out of the proposed Classes.

mailed to all Class Members, and that mailing will be supplemented by publication on the Settlement website.  The Proposed Class Notice is clear, accurate, easy-to-understand, and satisfies due process.

### F.  Proposed Schedule of Events

The schedule of events under the terms of the Settlement Agreement and proposed Preliminary Approval Order is set forth in the table below:

| EVENT | DATE | SETTLEMENT AGREEMENT OR ORDER IF APPLICABLE |
| --- | --- | --- |
| Class Counsel to provide Defendant name of financial institution and W-9 for Settlement Account | 10 calendar days after entry of Preliminary Approval Order | § 5.1 |
| Entry of Preliminary Approval Order | To be determined by Court | N/A |
| Defendant to pay $100,000 to Escrow Agent for initial Settlement Administration Expenses | 14 calendar days after entry of the Preliminary Approval Order | § 5.4 |
| Mailing of Notice to the Class | 45 days after entry of Preliminary Approval Order | Preliminary Approval Order |
| Deadline for Class Members to Object | 20 calendar days prior to the Fairness Hearing | Preliminary Approval Order |
| Deadline for Class Members to Request to Appear at Fairness Hearing | 20 calendar days prior to the Fairness Hearing | Preliminary Approval Order |
| Plaintiffs' Motion for Final Approval | 28 calendar days before the Final Fairness Hearing | § 4.1 |
| Plaintiffs' Motion for Approval of Fees and Expenses | 28 calendar days before the Final Fairness Hearing | § 7.3 |
| Plaintiffs' Application for Service Awards | 28 calendar days before the Final Fairness Hearing | § 7.3 |
| Independent Fiduciary to provide report authorizing the Settlement | 30 days prior to the Final Fairness Hearing | § 3.1.2 |

| Final Fairness Hearing | At least 100 days after the date of the motion for entry of the Preliminary Approval Order is filed | § 3.2.7 |
|---|---|---|
| Entry of Final Approval Order | To be determined by Court | N/A |
| Settlement Effective Date | Expiration of applicable appeals period for Final Approval Order | § 2.20 |
| Defendant to deposit remaining Settlement Fund of $6,600,000 into the Settlement Account | 7 calendar days after Settlement Effective Date | § 5.4 |

**G.  A Final Approval Hearing Should Be Scheduled**

Plaintiffs' Counsel moves the Court to schedule a Final Approval Hearing, as contemplated by Rule 23, to determine that final approval of the Settlement is warranted and proper.  *See* FED. R CIV. P. 23. Such hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy, and reasonableness of the Settlement Agreement.  Additionally, Class Counsel will present their application for their fees and reasonable expenses pursuant to Rule 23(h), as well as the Plaintiffs' incentive award.  To ensure ample time for Class Notices to be mailed and considered by Class Members, the Court should schedule such hearing for a date no earlier than one hundred (100) days from the date the Motion for Preliminary Approval is filed with the Court.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of the Settlement and for certification of the proposed Class for settlement purposes only and enter the proposed Preliminary Approval Order.

Dated: September 18, 2020                    Respectfully submitted,

*/s/ John J. Nestico*
John J. Nestico

35

SCHNEIDER WALLACE
COTTRELL KONECKY LLP
6000 Fairview Road, Suite 1200
Charlotte, NC 28210
Telephone: (704) 840-5263
Facsimile: (866) 505-8036
jnestico@schneiderwallace.com

Todd Schneider
James Bloom
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California  94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com

Todd S. Collins
Ellen T. Noteware
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103-6365
Telephone:  (215) 875-3000
Facsimile:  (215) 875-4604
tcollins@bm.net
enoteware@bm.net

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, I electronically filed the forgoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

I also served, via electronic mail a true and correct copy of the forgoing document to the following:

Christopher Boran
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
Tel: +1.312.324.1000
Christopher.boran@morganlewis.com

Jeremy Blumenfeld
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL  60601-5094
Tel: +1.312.324.1000
Jeremy.blumenfeld@morganlewis.com


*Attorneys for Defendants*

/s/   *John J. Nestico*
John J. Nestico